## IN THE UNITED STATES DISTRICT COURT
### FOR THE NORTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| **UNITED STATES OF AMERICA** | **ATTORNEY'S MEMORANDUM IN SUPPORT OF** |
| v. | **PRETRIAL RELEASE** |
| **DAVID J. FALSO,** | **Criminal Action No.** |
| **Defendant.** | **3:05-MJ-201 (TJM/DEP)** |

MARK D. SUBEN, an attorney duly admitted to practice before this Court and familiar with the facts and procedural circumstances of the captioned matter, respectfully affirms to the Court as follows:

I submit this Memorandum in support of David J. Falso's application to the Court to reconsider its Order of Detention dated and filed June 16, 2005, and to order Mr. Falso released upon such conditions as are fair and just. By this submission, we hope to satisfy the Court that both the risk of flight and danger to the community – concerns raised at the initial detention hearing – can be and are sufficiently addressed to permit Mr. Falso's precious liberty to be at least temporarily restored to him, and to permit the most effective assistance of counsel which only pretrial release can afford someone in his situation.

### Pretrial Detention Generally

Pretrial detention without bail is, by any reasonable measure, an extraordinary and drastic curtailment of an accused person's right to defend himself. The framers of the U. S. Constitution recognized this reality in drafting the Eighth Amendment ("Excessive bail shall not be required"). It is well recognized that Congress, when it passed the Bail Reform Act, presumed that pretrial release would be granted, and that only a limited group of offenders should be denied bail pending trial. *Title 18 USC § 3142; US v Shakur, 817 F2d 189, 195 (2d Cir), cert.*

1

*den. 484 US 840, 108 S Ct 128, 98 L Ed 2d 85 (1987) (quoting S.Rep.No. 225, 98th Cong., 2d Sess.7, reprinted in 1984 US Code Cong. & Ad.News 3182, 3189); US v Khashoggi, 717 FSupp 1048, 1049 (SDNY 1989).*

Congress has set forth the factors a court must consider in weighing the appropriateness of pretrial detention. *18 USC §3142(g)*. The court is instructed to consider "the nature of the offense, the weight of the evidence against the suspect, the history and character of the person charged, and the nature and seriousness of the risk to the community." *US v Chimurenga, 760 F2d 400, 403 (2d Cir 1985); US v Khashoggi, 717 FSupp 1048 (SDNY 1989).* To be sure, there is a statutory presumption – which is rebuttable – that no conditions will satisfy the criteria for release when the Court, as here, finds probable cause that a violation of 18 USC §§ 2251(a), 2423 and 2252A(a)(1) & (a)(2) has occurred. *18 USC §3142(e).*

It is respectfully submitted that in this case there are a number of factors of a compelling nature that were not previously before the Court, which rebut the presumption favoring detention and which justify releasing Mr. Falso.

### Nature of the Offense

Mr. Falso has been charged by indictment with violation of 18 USC §2423(b) (Travel with intent to engage in illicit sexual conduct with minors) (Counts 1 & 2) [statutory sentence range 0-30 years]; 18 USC §§2251(a) & (e) (Production of child pornography) (Counts 3 – 10) [statutory sentence range 15-30 years] (Penalty enhancement asserted for prior criminal conviction) [statutory sentence range 25-50 years]; 18 USC §§ 2252A(a)(2)(A) & (B), and 2252A(b)(1) (Receiving child pornography via the Internet) (Counts 11 – 233) [statutory sentence range 5-20 years] (Penalty enhancement asserted for prior criminal conviction) [statutory sentence range 15-40 years]; 18 USC §§ 2252A(a)(1) & 2252A(b)(1) (Transporting and shipping child pornography) (Counts 234 – 241)

[statutory sentence range 5-20 years] (Penalty enhancement asserted for prior criminal conviction) [statutory sentence range 15-40 years]; and 18 USC §§2252A(a)(5)(B) & 2252A(b)(2) (Possession of child pornography) (Count 242) [statutory sentence range 0-10 years] (Penalty enhancement asserted for prior criminal conviction) [statutory sentence range 10-20 years].  At the time of the first detention hearing on June 10, 2005, these charges were brought by Superceding Criminal Complaint.

Among other things, the government seized a number of photographs from a box or boxes in Mr. Falso's residence. If ultimately admissible, the photographs provide the basis for the government to contend that Mr. Falso violated one or more of Counts 11-233, involving receipt of child pornography via the Internet, requiring a mandatory minimum of 5 years imprisonment.  While the foregoing charge is not inconsequential, the remaining counts pose the greater risk of enhanced penalties.

However, as will be shown below, there is also reasonable basis to believe, as a matter of law, that prosecution of Mr. Falso under the remaining counts that carry higher mandatory minimums, or under the enhancement provisions requiring mandatory minimums of 10 or 15 or 25 years, cannot be maintained, even assuming admissibility of evidence.  Likewise, the United States Sentencing Guidelines, which though no longer mandatory are likely to be relied upon as advisory for sentencing, do not provide for sentences exceeding the mandatory 5 year minimum, even assuming conviction under 18 USC §§ 2252A or 2260(b) [the statute which governs the conduct alleged in §2251(a), involving production of child pornography outside the United States]) [See USSG §2G2.2].  Based on his criminal history, Mr. Falso's Criminal History Category under the Guidelines is likely to be scored in Category I.  Accordingly, probable sentencing ranges on which the Court relied in its Detention Order of June 16, 2005 are drastically higher than those likely to apply after motion to dismiss (See Memorandum in Support of

3

Defendant, David J. Falso, Bruce R. Bryan, Esq., Of Counsel,  hereinafter " Bryan Memorandum", annexed).

The issue of potential punishment was expressly and solely relied upon by Magistrate Peebles in his Detention Order (at p. 10) concerning risk of flight, and the arguments set forth herein could not have been raised in the short time available to the defense between Mr. Falso's arrest on June 8 and the detention hearing on June 10, 2005.

### Seriousness of Danger to Community and Risk of Flight

On the issue of danger to the community, Magistrate Peebles' concerns (at p. 11-12 of his Order) are, we submit, comprehensively and compellingly addressed in the annexed forensic psychological reports of Dr. Norman J. Lesswing (generally presenting mitigation) and Dr. Damian S. Vallelonga (specifically a psychosexual and risk assessment).  In addition, we have annexed eight letters of support from friends and family, to present a fuller factual basis for the Court to consider Mr. Falso's release on bail.  These reports and letters, discussed more fully below, provide a reliable basis to say that Mr. Falso would not present a grave danger to the youth or any other segment of the community, and they also could not have been presented at the previous detention hearing on June 10th.

### The Weight of the Evidence

The Indictment (previously the substantially similar Complaint) on which Mr. Falso has been detained without bail is based predominantly upon photographs recovered at his home pursuant to execution of a search warrant.

Statements attributed to him during the execution of the search warrant are subject to challenge, as they appear to have made after the government agents obtained probable cause to arrest him, when he thus was effectively in

custody or at least not free to leave, and it will not be disputed that he was not informed of his *Miranda* rights.

A computer recovered pursuant to the search warrant has been analyzed, and does not appear to contain any evidence adding to or changing the nature of the charges that have been brought.

While it may well be premature to be submitting a trial brief or jury instruction in this case, and the issue of guilt or innocence is not now before this Court, it is respectfully submitted that, in assessing the weight of the evidence in a bail determination, the accompanying Bryan Memorandum is relevant as it relates to the potential punishment Mr. Falso faces, particularly as that consideration was the express and sole issue on which Magistrate Peebles ruled that he was a flight risk. We ask the Court to consider that memorandum as if fully set forth herein.

The Bryan Memorandum demonstrates at Point I that Counts 3-10 of the Indictment, based on 18 USC §2251(a) and carrying the heaviest statutory mandatory minimum sentences, must be dismissed, as a matter of law. It demonstrates at Point II that Mr. Falso's prior conviction for Endangering the Welfare of a Child may not be used to enhance his sentence, as a matter of law. No other charges that remain in the Indictment or that could be brought based on the evidence, nor any reasonable computation based thereon under the Guidelines, suggests that Mr. Falso is facing more than 5 years imprisonment.

To be sure, one of the arguments raised in the Bryan Memorandum suggests that Mr. Falso could have been indicted, based on the evidence, under 18 USC § 2260(b). However, §2260(b) carries no mandatory statutory minimum, and does not trigger excessively high base offense levels under the Guidelines, §2G2.2. Guidelines §2G2.2 also relates to sentencing for 18 USC §2252A, on which the evidence against Mr. Falso, if admissible, seems strong. Upon his plea to either §2252A or §2260(b), under Guideline §2G2.2 Mr. Falso would be scored a base offense level 22; that would be reduced by 3 levels for acceptance of responsibility under Guidelines §3E1.1, for a base offense level of 19; with a Criminal History

Category of I or even II, Mr. Falso's presumptive sentence under the Guidelines would be well within the mandatory minimum under §2252A.

Moreover, Counts 1 and 2 of the Indictment, based on §2423(b) and being the only counts alleging actual sexual conduct with minors, create for the government the burden of establishing beyond a reasonable doubt the actual time of the conduct portrayed in the eight production photographs, as it was not a violation of federal law to engage in such conduct in foreign countries prior to April 2003. *(See Bryan Memorandum at p.8)* There may also be a defense of defendant's good faith and lack of knowledge of the true age of a minor. *Cf. US v X-Citement Video, Inc., 513 US 64, 115 S Ct 464 (1994) (involving §2251; construing the "knowingly" element of §2252).* Certainly Mr. Falso's statements to the agents, which we contend cannot be used against him (*see discussion, supra*), convey a good faith belief that he was not engaging in sex with underage females.

For all these reasons, we respectfully submit that the potential punishment Mr. Falso reasonably faces does not outweigh the "defendant's relatively stable circumstances, including his ties to the local community and ownership of two successful businesses in the area" (*Detention Order at p. 10*), and does not support the finding that he presents a risk of flight or non-appearance. Obviously, we acknowledge that this is still a very serious case. We suggest only that there is a reasonable view of the evidence which strongly reduces the potential punishment Mr. Falso faces, and that these considerations should in fairness be taken into account in determining whether to continue to detain him without bail. To be sure, five years is still a long time for a 64-year-old man, but it is doable for one in relatively good health, and surely does not present an incentive to flee the only home he has ever known.

## History, Character and Risk Assessment of the Defendant

The accompanying psychological reports of Dr. Lesswing and Dr. Vallelonga, and the letters of support, which we incorporate and ask the Court to consider as if fully set forth herein, demonstrate that David Falso is a man of integrity despite his evident sexual dysfunction, and further demonstrate that his dysfunction would not present a risk of flight or a danger to the community if he were released pending trial or plea.

### The Vallelonga Report

Dr. Vallelonga's report is particularly compelling in several respects. First and foremost, he concludes that Mr. Falso's deviant sexual interest in young females presents a low risk for sexual recidivism; that he is not a sexual predator, nor a psychopath nor does he have an antisocial personality nor any violent history or tendencies; that he is not exclusively or constitutionally a pedophile, in that his sexual interest is not only for young females and it was late-developing in response to curiosity and novelty and availability; and that for all those reasons Mr. Falso is eminently treatable. Moreover, the force of Dr. Vallelonga' conclusions is supported by his finding that Mr. Falso has been extraordinarily honest and open in responding to his evaluation.

### The Lesswing Report

Dr. Lesswing's report supports, in a more general manner, the findings of the psychosexual assessment that Mr. Falso would return, and would not pose a threat to the community, if released. The Lesswing report details a great deal of personal and family background, and discusses additional psychological tests that he administered. Dr. Lesswing reinforces, with specific reference to testing and history, Dr. Vallelonga's conclusions. He finds that Mr. Falso is consistently candid, "capable of insight", "has a conscience", accepts responsibility and expresses appropriate remorse – "characteristics...seldom encountered among sexual offenders...even more rarely to the extent demonstrated by Mr. Falso". (p. 8)  He

finds his personality and character structure demonstrably free of antisocial personality disorder, psychopathy, or excessive or pathological narcissism. (p. 8) Dr. Lesswing confirms the addictive and compulsive nature of Mr. Falso's involvement with internet pornography, which he finds fueled the interest in child sexual fantasies. (pp. 8-9) He concurs with Dr. Vallelonga's assessment that Mr. Falso presents a low risk for reoffending and an excellent prognosis for benefiting from treatment. (p. 9) Dr. Lesswing concludes that "all sexual offenders are not identical, and David Falso clearly presents with numerous and significant mitigating issues". (p. 9)

### The Letters of Support

When a Court makes the important decision as to whether or not to deny an accused person his precious liberty, and to release him on bail before trial, it must perforce do so on facts that are only sketches of that person's true character and history. Despite the best efforts of the Probation Department to examine a defendant's background, a short Pretrial Services Report often cannot present all relevant facts. We have submitted with this Memorandum eight letters of support for Mr. Falso, reproduced in full as attachments, and summarized here.

These letters of support from various and eminently respectable members of Mr. Falso's community and family, who have known him for a very long time and in varied personal and professional contexts, provide the Court with a somewhat fuller and more personal basis to consider his release on bail.

**Jim Place** is the owner of a leading insurance agency, and member and leader of many charitable and service organizations and boards in the Cortland community, and the father of daughters, who has known David Falso for many years both personally and professionally. Mr. Place is fully aware of the charges, and obviously cannot address them, yet he unhesitatingly vouches for Mr. Falso's personal integrity, and states his strong belief that if released, Mr. Falso would keep his commitment not to flee nor re-offend.

**Paul Consroe**, Ph.D., is a lifelong friend of David Falso.  Dr. Consroe is an emeritus professor of  pharmacology and toxicology at the University of Arizona. He is fully familiar with the lawful purpose of Mr. Falso's trips to East Asia, and can attest to the fact that David sincerely hoped to find a life companion in the Philippines, as Dr. Consroe had done.  He is fully aware of the charges, yet unhesitatingly vouches for Mr. Falso's personal integrity, and states his complete confidence that the young female members of his own family have been and would be safe in Mr. Falso's company.

**Daniel Tagliente** is current Cortland County legislator, a former Cortland City councilor and a retired school teacher, who has known David Falso all each of their lives.  They played sports together and were altar boys together.  He, like every other informed citizen of Cortland, is familiar with the charges against Mr. Falso, yet he unhesitatingly attests to his peaceable and unmenacing nature, and supports his release.

**"Skip" Boise** is a fellow tavern owner who has known David Falso personally and professionally for 45 years.  With knowledge of the charges, he attests to David's honesty, professionalism and community-mindedness, and urges his release on bail.

**Kate Mendillo** is another bar business owner, who began her career working for David Falso, who provided a letter in support of his release.  She advised your affirmant that she was 19-years-old when she first worked for him, and attests to her continued respect for him, and particularly to the fact that he always treated her and others fairly and respectfully.

**"Chip" Wood**  is a Cortland vending company owner, who has known Mr. Falso for about 35 years as a friend and business associate.  He unreservedly vouches for David's honesty and dependability, and proclaims his friendship in the face of the pending charges.

9

**Michael Wood** is Chip's brother, and likewise is willing to go on record to proclaim his friendship and to attest to David Falso's personal and professional integrity.

**Kristen McEvoy-Rorie** is David Falso's niece, and brings a unique personal and professional perspective in her letter of support for her Uncle Dave. Ms. Rorie has known him for her entire 34-year life, raised in close family contact with him since she was an infant. She is also a long-time child abuse professional, working currently in the court system in North Carolina, with an evident dedication to sexually and emotionally abused children. With a rather direct professional knowledge of the nature of these charges, and from intimate personal knowledge, she attests to David Falso's personal integrity, his dedicated community involvement, the esteem in which he is held by his many friends and acquaintances, and the reasons why. Of special significance, she states "unequivocally that I never experienced any harm at the hands of my Uncle Dave" and at "no time in my childhood or development did I ever feel uncomfortable being in his presence or have any concerns for my safety while with him. Uncle Dave was not the type to surround himself with children and always appeared to prefer adult company." This letter, from this highly informed source, perhaps more than any other supports the findings of Drs. Lesswing and Vallelonga that David Falso is not a constitutional or compulsive pedophile and would present a very low risk to his community if released.

There is a tendency, when one is accused of such crimes as is David Falso, for his friends to remain mute and avoid identifying themselves with him. That is perfectly understandable, and perhaps wise, and – upon your affirmant's personal knowledge – it is surely the case for many people who might otherwise have come forward to support him. In spite of that, the foregoing eminently respectable citizens have declared their belief in David's integrity and worth. They provide a perspective that is otherwise unavailable to the Court or to the Probation Department and Pretrial Services, and it is a wholly positive one.

All of the foregoing reports and letters reliably support our application for release of David Falso pending trial or plea, by demonstrating that he is not unreasonably a risk to flee nor unreasonably a danger to the community.

### Proposal for Release Pending Trial or Plea

We respectfully ask, based on the submissions and arguments contained in this Memorandum, that the Court reconsider its initial determination with respect to bail, and order Mr. Falso released upon a combination of conditions that he would unquestionably abide by.  We recommend the following conditions:

<u>Recommended Pretrial Conditions of Release</u>: The defendant shall:

(1)     Report to Pretrial Services within 24 hours of release, Tel. No. (315) 234-8700, and as directed thereafter; and allow a probation officer to visit at anytime at the defendant's home or elsewhere.

(2)     Execute a bond or an agreement to forfeit upon failing to appear as required the following sum of money or designated property: $250,000.

(3)     Surrender any passport to:  The Clerk of the Court.

(4)     Obtain no passport.

(5)     Restrict travel to the Northern District of New York unless approved by Pretrial Services or the Court.

(6)     Refrain from possessing a firearm, destructive device, or other dangerous weapon.

(7)     Report as soon as possible, to Pretrial Services or the Court, any contact with any law enforcement personnel, including but not limited to any arrest, questioning or traffic stop.

(8)     Not have any contact with any person under the age of 18 without the prior approval of Pretrial Services or the Court; not frequent places where

children are likely to congregate, including but not limited to schools, parks and arcades.

(9)     Not possess any pornography.

(10)    Not possess or use any computer, except at place of business for the express use of the business, and not visit the Internet for any purpose at any location.

(11)    Not possess or ingest any alcohol or non-prescribed controlled substance, except may possess but not ingest alcohol in connection with the operation of defendant's bar businesses, and submit to random testing by Pretrial Services or its agents.

In the event that the Court believes that Mr. Falso ought to be released but under more restrictive conditions, we propose the following supplemental or alternative conditions:

<u>Alternative Recommended Pretrial Conditions of Release</u>: The defendant shall:

(1)     Post security with the Court in an amount not less than $100,000, pledged and secured by property owned by the defendant.

(2)     Wear an electronic monitoring device, and be restricted to his home, except for attendance at religious services, medical treatment, attorney visitation and consultation, Court-ordered obligations, or any other activities expressly approved by Pretrial Services or the Court.

(3)     Call in to Pretrial Services daily.

(4)     If technologically possible, submit to and pay for at defendant's own expense a block on his telephone which permits only calls to and from Court or Pretrial Services approved telephone numbers.

(5)     Submit to and consent to unannounced searches of his home by representatives of Pretrial Services.

**Conclusion and Request for Relief**

Based on the Bryan Memorandum, the psychological reports of Drs. Lesswing and Vallelonga, and the letters of support from reputable people in the community and elsewhere with pertinent knowledge of Mr. Falso's character, we respectfully submit that the presumption of pretrial detention is rebutted. Remaining concerns about release are such as exist in all cases, and yet do not disqualify other defendants similarly situated.

David Falso has great devotion to family. He wants to wrap up his affairs, with the knowledge that he may be in prison for some time under the best of circumstances, so that he can provide for his family what remains of the product of his life's hard and honest work, whether he survives prison or not.

His full and honest cooperation from the inception of this case has been attested to by the arresting FBI agents in their reports, by the prosecuting Assistant US Attorney in the prior detention hearing, and by the licensed psychologists who interviewed him for the defense. His family and friends, in the face of almost certain public and professional disapproval, have vouched for his character.

We most respectfully and earnestly urge this Court to release David Falso pending trial or plea, on such conditions as are fair, just and appropriate.

Dated:        August 23, 2005
              Cortland, New York

_____
**MARK D. SUBEN, ESQ.**
*Attorney for David Falso*
Federal Bar Roll No. 507807
One North Main Street – 3rd Floor
Cortland, New York 13045
Phone (607) 756-2100

To:    Magistrate David E. Peebles
       AUSA Miroslav Lovric

# LEGAL MEMORANDUM OF BRUCE BRYAN, ESQ.
## OF COUNSEL

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF NEW YORK

UNITED STATES OF AMERICA

vs.

DAVID J. FALSO,

                              Defendant.

Criminal Action No.
3:05-MJ-201(TJM)

**MEMORANDUM IN SUPPORT OF DEFENDANT,
DAVID J. FALSO**

Respectfully submitted by:

MARK D. SUBEN, ESQ.
*Attorney for Defendant Falso*
One North Main Street, 3rd Floor
Cortland, New York 13045
Phone (607) 756-2100

Of Counsel:

BRUCE R. BRYAN, ESQ.
333 East Onondaga Street
Syracuse, New York 13202
Phone (315) 476-1800

## PRELIMINARY STATEMENT

This memorandum is provided to the Court in further support of the contention that the Defendant, David J. Falso, does not constitute a risk of flight or danger to the community, in that there exist defenses that, at the very least, substantially lessen the severity of punishment if Mr. Falso is found guilty of one or more of the acts charged.

### POINT I

### COUNTS III THROUGH X OF THE INDICTMENT WILL BE DISMISSED AS A MATTER OF LAW

Counts III through X of the Indictment carry with them the most severe potential penalties against Mr. Falso. (A copy of the Indictment is attached as Exhibit "A".) They involve eight photographs allegedly taken by Mr. Falso while he was alleged to have been on vacation in one or more foreign countries. The photographs purportedly are images of minors engaged in sexually explicit conduct. In Counts III through X, the Government alleges that such photographs constitute violations of 18 U.S.C. § 2251(a). As discussed below, Section 2251(a) does not apply to the taking of such photographs in foreign countries and therefore said counts will be dismissed as a matter of law.

Courts lack jurisdiction over alleged crimes committed in foreign jurisdictions unless such jurisdiction has been expressly conferred by a law passed by Congress. *See, United States v. Gatlin*, 216 F.3d 207 (2d Cir. X00). In determining whether a statute is to be applied extra-territorially, a court is guided by the general "presumption that acts of Congress do not ordinarily apply outside our borders." Id.; *Sale v. Haitian Ctrs. Council, Inc.*, 509 U.S. 155, 3 (1993); *E.E.O.C. v. Arabian American Oil Co.,* 499 U.S. 244, 248

2

(1991) ("it is a longstanding principle of American law that legislation of Congress, unless a contrary intent appears, is meant to apply only within the territorial jurisdiction of the United States."). Congress "generally legislates with domestic concerns in mind." *Smith v. United States,* 507 U.S. 197, 204 n. 5 (1993). While Section 2251(a) clearly applies to the taking of photographs of minors engaged in such conduct within the United States, it does not apply to the taking of photographs of minors in foreign countries. Rather, a separate statute applies to such acts.

The interpretation of Section 2251(a) is determined by (1) the language of the statute, (2) its legislative history, and (3) the underlying objectives of the statute. *United States v. Bailey,* 444 U.S. 394, 406 (1980); *United States v. Clark,* 454 U.S. 555, 561 (1982). Section 2251(a) of Title 18 of the United States Code states:

> Any person who employs, uses, persuades, induces, entices, or coerces any minor to engage in, or who has a minor assist any other person to engage in, or who transports any minor in interstate or foreign commerce, or in any Territory or Possession of the United States, with the intent that such minor engage in, any sexually explicit conduct for the purpose of producing any visual depiction of such conduct, shall be punished as provided under Section (e), if such person knows or has reason to know that such visual depiction will be transported in interstate or foreign commerce or mailed, if that visual depiction was produced using materials that have been mailed, shipped, or transported in interstate or foreign commerce by any means, including by computer, or if such visual depiction has actually been transported in interstate or foreign commerce or mailed.

18 U.S.C. § 2251(a).

Section 2251(a) has two distinct clauses. The first clause describes the elements of the crime and the second clause further conditions the crime on a determination that the photograph produced as a result of the crime traveled in interstate or foreign commerce. With respect to the first clause, the crime has three distinct elements: The person must (1)

3

use or persuade a minor; (2) with the intent that such minor engage in sexual explicit conduct; (3) for the purpose of producing a photograph of such conduct. Importantly, Congress did not expressly state that the foregoing elements applied to acts committed outside the United States.

In fact, Section 2251(a) contains a phrase (not applicable to the case at bar) that does apply to conduct outside the United States. Specifically, Section 2255(a) also sanctions a person who "transports any minor in . . . foreign commerce" intending to photograph the minor while engaged in sexually explicit conduct. In other words, a person violates Section 2251(a) if they bring a child from the United States into a foreign country, or bring a child from a foreign country into the United States, with the intent that such minor engage in sexually explicit conduct for the purpose of producing a photograph of such conduct. By expressly applying Section 2251(a) to such limited conduct in foreign countries (transportation of a minor), Congress necessarily excluded all other conduct committed in foreign countries from the reach of the statute.

In sum, Congress did not authorize application of Section 2255(a) to photographs taken of minors in foreign countries (with the exception of transportation of a minor for such purpose). Section 2251(a) cannot be applied to the conduct alleged against Mr. Falso in Counts III through X of the Indictment. To hold otherwise would extend any United States criminal statute to any alleged criminal act committed in any foreign country by any individual. As discussed above, federal criminal jurisdiction does not extend to foreign acts, unless explicitly authorized by Congress.

Significantly, Congress sanctioned the acts alleged to have been committed by Mr. Falso in Counts III through X in a different statute that imposes significantly less severe

4

punishment.  In virtually identical language,  Section 2260(a) of Title 18 of the United

States Code states:

> A person who, *outside the United States,* employs, uses, persuades,
> induces, entices, or coerces any minor to engage in, or who has a minor
> assist any other person to engage in, or who transports any minor with the
> intent that the minor engage in any sexually explicit conduct for the purpose
> of producing any visual depiction of such conduct, intending that the visual
> depiction will be imported into the United States or into waters within twelve
> miles of the coast of the United States, shall be punished as provided in
> subsection (c) [of 18 U.S.C. § 2260].

18 U.S.C. § 2260(a) (*emphasis added*).


Clearly, Section 2260(a) was intended by Congress to sanction the conduct that is

the subject of Counts III through X of the Indictment.  To construe Section 2251(a) such

that it also sanctions the alleged conduct would render Section 2260(a) superfluous. It is a

well-settled rule of statutory construction that a court will not read statutes in a manner that

renders statutory language superfluous.  *See, Babbitt v. Sweet Home Chapter of Cmtys.*

*for a Great Or,* 518 U.S. 687, 698 (1995); *Filler v. Hanvit Bank*, 378 F.3d 23 (2d Cir. 2004);

California Public Employees Retirement System v. World Com., Inc., 368 F.3d 86 (2d Cir.

2004); *Blumenthaul v. United States Department of Interior*, 228 F.3d 82 (2d Cir. 2000) (a

court is required to disfavor interpretations of statutes that render language superfluous);

*United States v. Bernier*, 954 F.2d 818 (2d Cir. 1992) (courts must give effect to every word

of a statute where possible); *Bell v. Reno*, 218 F.3d 86 (2d Cir. 2000) (a statute generally

must not be construed so as to render a word or clause inoperative); *Apwu v. Potter*, III48

F.3d 619 (2d Cir. 2003) (a basic tenant of statutory construction is that no sections should

be interpreted so as to render any one section as inoperative, superfluous, void or

5

insignificant); *United States v. Plaza Health Laboratories, Inc.*, 3 F.3d 64III (2d Cir. 1993) (it is elemental that Congress does not add unnecessary words to statutes); *Auburn Housing Authority v. Martinez*, 277 3d 138 (2d Cir. 2002) (a court must interpret a statute so as to remain faithful to the words expressed by Congress in the whole statutory scheme, and a court is therefore not permitted to nullify unilaterally statutory language).

Congress first enacted Section 2251 in 1978. See, Pub. L. 95-225, § 2(a), Fed. 6, 1978, 92 Stat. 7. Congress later enacted Section 2260 in 1994. See Pub. L. 103-322, Title XVI, § 160001(a), September. 3, 1994, 108 Stat. 2036. When Congress first enacted Section 2251, it made certain findings that made clear that Congress was solely concerned with the domestic sexual exploitation of children and not the exploitation of children worldwide. Specifically, Congress made the following findings:

Congress finds that -

"(1) child pornography has developed into a highly organized, multi-million-dollar industry which operates on a *nationwide scale*;

"(2) *thousands of children including large numbers of runaway and homeless youth* are exploited in the production and distribution of pornographic materials; and

(3) the use of children as subjects of pornographic materials is harmful to the psychological, emotional, and mental health of the individual child *and to society*."

Pub. L. 98-292, § 2. (*emphasis added*).

The foregoing confirms that Section 2251(a) was not intended to apply to acts involving minors in foreign countries and that Section 2260 was later enacted to expand criminal sanctions to such foreign acts. This distinction is significant in that the punishment

6

applicable to foreign acts is significantly less than that provided by Section 2251. Section 2260 does not contain statutory mandatory minimum sentences. It merely states that a person who violates said section may be punished up to a maximum of ten (10) years imprisonment.   Conversely, Section 2251 requires a statutory mandatory minimum sentence of 15 years imprisonment. Furthermore, it requires a statutory mandatory minimum sentence of 25 years against a person who has a prior conviction relating to the sexual exploitation of children. Obviously, Congress decided that more severe penalties should be imposed when the harm is committed against minors in the United States, but that the United States has less of a vested interest in punishing such acts as severely when the acts are committed in foreign countries.

In addition, in 2003 Congress amended Section 2423 of Title 18 of the United States Code to criminalize travel in foreign commerce for the purpose of engaging in illicit sexual conduct and to criminalize engaging in illicit sexual conduct in foreign places. Specifically, Section 2423 states, in pertinent part:

**(b)** **Travel with intent to engage in illicit sexual conduct** . - A person who travels in interstate commerce or travels into the United States, or a United States citizen or an alien admitted for permanent residence in the United States who travels in foreign commerce, for the purpose of engaging in any illicit sexual conduct with another person shall be fined under this Title or imprisoned not more than 30 years, or both.

**(c)** **Engaging in illicit sexual conduct in foreign places.** - Any United States citizen or alien admitted for permanent residence who travels in foreign commerce, and engages in any illicit sexual conduct with another person shall be fined under this Title or imprisoned not more than 30 years, or both.

18 U.S.C. § 2423(b) and (c).

Again, Congress found it necessary to enact legislation in 2003 to cover the conduct

7

that is the subject of the allegations contained in Counts III through X of the Indictment. (In fact, the Indictment charges Mr. Falso with violation of Sections 2423(b)(c) in other counts of the Indictment.).    Significantly, Section 2423, prior to its amendment in 2003, only criminalized travel in interstate commerce (and not foreign commerce) with the intent to engage in a sexual act with a minor.  Congress found it necessary to amend Section 2223 to expressly include travel in foreign commerce and acts committed in foreign places.  It did so by including express language to that effect.  The 2003 amendment of Section 2423 is consistent with the well-established principle that a statute does not apply beyond the borders of the United States unless Congress expressly authorizes such application. Applying the foregoing to the analysis to Section 2251(a), Congress did not expressly authorize in Section 2251(a) the application of such section to the taking of photographs of minors in foreign countries.  Rather, Congress enacted Section 2260(a) to apply to such conduct.  *See, United States v. Clark*, 315 F.Supp.2d 1127 (W.D. Wash. 2004) (extra-territorial application of Section 2423, as amended, was a proper exercise by Congress of extra-territorial jurisdiction of an American citizen engaged in such conduct abroad).  Based on the foregoing, Counts III through X of the Indictment alleging violation of Section 2251(a) will be dismissed.

## POINT II

### MR. FALSO'S PRIOR CONVICTION FOR ENDANGERING THE WELFARE OF A CHILD MAY NOT BE USED TO ENHANCE A HIS SENTENCE

Count III through X of the Indictment also seek to enhance the potential sentence that Mr. Falso may receive, if convicted, on the basis of an allegation that he has "a prior final conviction under the laws of a State for offenses relating to the sexual exploitation of

8

children. . . ." Under Section 2251 of Title of United States Code, such prior final conviction, if applicable, would result in a statutory mandatory minimum sentence of 25 years. Similarly, Counts 11 through 233 of the Indictment also seek to enhance Mr. Falso's potential sentence under said Counts based on an alleged "prior final conviction under the laws of a State for offenses relating to sexual abuse and abusive of sexual conduct involving a minor. . . ." Under Section 2252A of Title 18 of the United States Code, such prior final conviction would result in a statutory minimum sentence of ten years.

The Government's claim that such enhanced sentence should be applied is based on the fact that in 1987 Mr. Falso pled guilty to a charge of "Endangering the Welfare of a Child" under New York Penal Law Section 260.10(1). (Attached as Exhibit "B" to this Memorandum is a Certificate of Disposition provided by the United States Attorney's Office relating to said charge with a criminal complaint executed by a New York State Investigator and an affidavit by the alleged victim.) According to the Disposition, Mr. Falso pled guilty to the charge of Endangering the Welfare of a Child in 1987 in the Homer Town Court. The Homer Town Court is not a court of record and a transcript of the plea proceeding does therefore not exist. The criminal complaint and affidavit allege that in January or February or 1986, Mr. Falso touched the vagina of a female less than 17 years of age. As discussed below, said conviction for Endangering the Welfare of a Child under New York Penal Law Section 260.10(1) may not be used to enhance Mr. Falso's sentence on several grounds.

A. Under The Supreme Court's Recent Decision In *Shepard*, Mr. Falso's Conviction For "Endangering The Welfare Of A Child" May Not Be Used As A "Prior Conviction" To Enhance His Sentence

In *Shepard v. United States*, ___ U.S. ___, 125 S. Ct. 1254 (2005), the defendant pled guilty to violation of 18 U.S.C. § 922(g)(1), which bars a felon from possessing a

9

children. . . ." Under Section 2251 of Title of United States Code, such prior final conviction, if applicable, would result in a statutory mandatory minimum sentence of 25 years. Similarly, Counts 11 through 233 of the Indictment also seek to enhance Mr. Falso's potential sentence under said Counts based on an alleged "prior final conviction under the laws of a State for offenses relating to sexual abuse and abusive of sexual conduct involving a minor. . . ." Under Section 2252A of Title 18 of the United States Code, such prior final conviction would result in a statutory minimum sentence of ten years.

The Government's claim that such enhanced sentence should be applied is based on the fact that in 1987 Mr. Falso pled guilty to a charge of "Endangering the Welfare of a Child" under New York Penal Law Section 260.10(1). (Attached as Exhibit "B" to this Memorandum is a Certificate of Disposition provided by the United States Attorney's Office relating to said charge with a criminal complaint executed by a New York State Investigator and an affidavit by the alleged victim.) According to the Disposition, Mr. Falso pled guilty to the charge of Endangering the Welfare of a Child in 1987 in the Homer Town Court. The Homer Town Court is not a court of record and a transcript of the plea proceeding does therefore not exist. The criminal complaint and affidavit allege that in January or February or 1986, Mr. Falso touched the vagina of a female less than 17 years of age. As discussed below, said conviction for Endangering the Welfare of a Child under New York Penal Law Section 260.10(1) may not be used to enhance Mr. Falso's sentence on several grounds.

A.   Under The Supreme Court's Recent Decision In *Shepard*, Mr. Falso's Conviction For "Endangering The Welfare Of A Child" May Not Be Used As A "Prior Conviction" To Enhance His Sentence

In *Shepard v. United States,* ___ U.S. ___, 125 S. Ct. 1254 (2005), the defendant pled guilty to violation of 18 U.S.C. § 922(g)(1), which bars a felon from possessing a

9

firearm.  The defendant's sentencing range under the Sentencing Guidelines was between 30 and 37 months.  However, the Government contended that the defendant was subject to the 15-year minimum sentence required by Section 924(e), also known as the Armed Career Criminal Act (ACCA).  The ACCA requires a 15-year sentence for anyone who possesses a firearm after receiving three prior convictions for "serious drug offenses" or "violent felonies."  In *Shepard*, the defendant had four prior convictions (to which he had entered pleas of guilty) under a Massachusetts burglary statute.    However, the Massachusetts burglary statute encompassed not only "generic burglaries" but also other forms of burglary, such as entries into boats and cars.  The Supreme Court had previously held in *Taylor v. United States,* 495 U.S. 575 (1990) that only a "generic burglary" conviction could serve as a predicate "violent felony" under the ACCA.  The Court in *Taylor* had held that a sentencing court may only consider statutory elements, indictment, and jury instructions to determine whether the earlier conviction after a trial was for "generic burglary."

In *Shepard*, such "record" evidence did not exist.  The Government contended that a sentencing court should be permitted to consider other documents, such as police reports, to determine whether the prior conviction based on a guilty plea was for a "generic burglary."  The Supreme Court rejected the Government's contention, holding that a sentencing court could only consider "the terms of the charging document, the terms of a plea agreement or transcript of colloquy between judge and defendant in which the factual basis for the plea was confirmed by the defendant, or to some comparable judicial record of this information."

The opinion in *Shepard* was not limited to the narrow issue of the record evidence

10

that may be considered by a sentencing court. The Supreme Court bolstered its decision by reference to its strong concerns under *Apprendi* that a defendant's right to a jury trial must be protected. In Part 3 of the majority opinion, four Justices (Souter, Stevens, Scalia, and Ginsberg) stated that recent "developments in the law" had provided "a further reason to adhere to the demanding requirement that any sentence under the ACCA rest on a showing that a prior conviction 'necessarily' involved (and a prior plea necessarily admitted) facts equating to generic burglary."

The four Justices reasoned that "a broad evidentiary enquiry" into the factual basis for the prior convictions would likely abridge a defendant's right to a jury trial, citing *Apprendi* and *Jones v. United States,* 526 U.S. 227 (1999). The four Justices observed that the sentencing court in *Shepard* had been required to make a disputed finding of fact. Such "dispute raises the concern underlying *Jones* and *Apprendi*: the Sixth and Fourteenth Amendments guarantee a jury standing between a defendant and the power of the state, and they guarantee a jury's finding of any disputed fact essential to increase the ceiling of a potential sentence." The four Justices recognized that the finding of fact required in *Shepard* was "too much like the findings subject to *Jones* and *Apprendi*."

The four Justices also stated that "[t]he rule of reading statutes to avoid serious risks of unconstitutionality . . . therefore counsels us to limit the scope of judicial fact-finding on the disputed generic character of a prior plea, just as *Taylor* constrained judicial fact-findings about the generic implications of a jury's verdict."

In a concurring opinion, Justice Thomas went further than the four Justices that had joined in Part 3 of the Opinion. Justice Thomas stated that the ACCA as applied to

11

*Shepard* ran directly afoul of *Apprendi*. Justice Thomas observed that the ACCA required a sentencing court to make a factual finding on whether the prior convictions were for "violent felonies" or for "serious drug offenses." Justice Thomas urged the Court to, at some point, reconsider and reverse its decision in *Almendarez-Torres v. United States*, 523 U.S. 224 (1998) (drawing "an exception to the *Apprendi* line of cases for judicial fact-finding that concerns a defendant's prior convictions.") In *Shepard*, the parties did not request it. Justice Thomas declared that *Almendarez-Torres was* "flawed and its continuing viability should be reconsidered in an appropriate case." Importantly, it was Justice Thomas who had cast the deciding vote in *Almendarez-Torres* to create the exception *to Apprendi* regarding prior convictions.. The decision in *Almendarez-Torres* was by a 5 - 4 vote of the Justices. Therefore, in theory, the Supreme Court will overrule *Almendarez-Torres* when it reconsiders the issue.

Applying the Supreme Court's decision in *Shephard* to the case at bar, the Government may not use Mr. Falso's prior conviction for "Endangering the Welfare of a Child" to support an enhanced sentence for a "prior final conviction" allegedly relating to sexual exploitation of a child, sexual abuse or abusive sexual conduct involving a minor. By definition, the New York State crime entitled "Endangering the Welfare of a Child" covers a broad range of conduct and is not exclusively limited to conduct relating to sexual contact or sexual exploitation of a child. Section 260.10(1) of the New York Penal Law states, in pertinent part:

A person is guilty of endangering the welfare of a child when:

1.    He knowingly acts in a manner likely to be injurious to the physical, mental or moral welfare of a child less than 17 years old or directs or

12

> authorizes such child to engage in an occupation involving a
> substantial risk of danger to his life or health . . . .

N.Y. Penal Law § 260.10(1).

A person may be guilty of Endangering the Welfare of a Child when shaking an infant and causing injury to the infant. *People v. Goodridge*, 251 A.D.2d 85, 675 N.Y.S. 2d 24 (1st Dept. 1998). Likewise, a person may be guilty of such crime when making mocking and vulgar remarks to a child over a period of time. *People v. Simmons*, 92 N.Y.2d 829, 677 N.Y.S.2d 58 (1998). *See also, People v. Bergerson*, 17 N.Y.2d 398, 271 N.Y.S.2d 236 (1966) (providing an excessive amount of alcohol to a 15-year old boy was endangering the welfare of a child). *People v. Fogler*, 184 A.D.2d 270, 585 N.Y.S.2d 26 (1992) (holding a young boy by the collar, producing a knife, holding it about a foot away from the boy's chest and threatening him, was endangering); *People v. Jacobsen*, 255 A.D.2d 951 (4th Dept. 1998) (bringing infant along in the car during an attempted burglary constituted endangering the welfare of a child). A person may also be found guilty of endangering the welfare of a child as a consequence of illegal sexual contact with the child. *See, e.g., People v. Baley*, 252 A.D.2d 815, 675 N.Y.S.2d 706 (3d Dept. 1998).

Based on the foregoing, the mere fact that Mr. Falso pled guilty to Endangering the Welfare of a Child under New York Penal Law Section 260.10(1) does not, in and of itself, provide the necessary predicate for the imposition of a statutory mandatory minimum sentence. There is nothing in said crime which permits a court to conclude as a matter of law that Mr. Falso had been convicted of a crime "relating to the sexual exploitation of children" or for a crime "relating to sexual abuse or abusive sexual conduct with a minor. . . ."

13

Importantly, *Shepard* holds that a court may not "look behind" the crime of conviction to such documents as police reports, criminal complaints, or affidavits of witnesses to further define the crime based on the underlying conduct. With regard to Mr. Falso's prior conviction, the Homer Town Court is not a court of record and therefore there is no transcript of Mr. Falso's plea allocution. Moreover, in entering a plea of guilty, Mr. Falso need not have admitted that he had engaged in the conduct of which he was accused. For example, Mr. Falso could have denied that he had sexual contact with the minor but admitted that he had nonetheless engaged in conduct that endangered the welfare of the child. Based on the foregoing, the Government may not rely on Mr. Falso's conviction for Endangering the Welfare of a Child to enhance his sentence, if he is convicted.

B.    In Addition, Even If The Government Could Rely On The Alleged Underling Conduct For The State Conviction, It Does Not Support An Enhanced Sentence Under Section 2251(e)

Section 2251(e) requires that the prior conviction be one "under this chapter" or "under the laws of any State relating to the sexual exploitation of children. . . ." See 18 U.S.C. § 2251(e). When referring to crimes "under this chapter," Congress expressly referred to Chapter 110, entitled "Sexual Exploitation and Other Abuse of Children." Presumably, a conviction under State law for a crime "relating to the sexual exploitation of children" must be substantially identical to the crimes enumerated in Chapter 110. A review of the crimes enumerated in Chapter 110 reveals that they are different from the underlying conduct described in the criminal complaint for the charge of Endangering the Welfare of a Child to which Mr. Falso pled guilty.

For example, Section 2251, entitled "Sexual Exploitation of Children" deals with the photographing a minor engaged in sexually explicit conduct. Section 2251A deals with the

14

"selling or buying of children." Sections 2252 and Section 2252A deal with child pornography. Section 2260 deals with photographs taken of a minor engaged in sexually explicit conduct which are thereafter imported into the United States. In sum, the crimes enumerated under Chapter 110 deal, in one way or another, with child pornography or the buying or selling of children.

In regard to Mr. Falso's prior conviction, he was allegedly accused of improperly touching the vagina of a minor female. Such conduct would not be included in the crimes enumerated in Chapter 110. Therefore, even if the Government could rely on the alleged underlying conduct involved in the prior conviction, such underlying conduct would not supply the necessary predicate for an enhanced sentence under Section 2251(e).

## C. Furthermore, New York Law Has Specifically Identified Crimes Relating To Sexual Exploitation Of Children, Sexual Abuse And Sexual Abuse Of A Minor And Mr. Falso Did Not Plead Guilty To Those Crimes

New York has very specific crimes that relate to sexual exploitation of children, sexual abuse and sexual abuse of a minor. In regard to child pornography, New York criminalizes such conduct under Article 263 of the New York Penal Law, Titled "Sexual Performance By A Child." For example, Section 263.16, entitled "Possessing a Sexual Performance by a Child," makes it a crime for a person to possess "a sexual performance by a child when, knowing the character and content thereof, he knowingly has in his possession or control any performance which includes sexual conduct by a child less than 16 years of age." Said statute criminalizes the possession of child pornography. *See, People v. Gilmour*, 177 Misc.2d 250, 678 N.Y.S.2d 436 (1998). Similarly, New York criminalizes the production of child pornography in Section 263.15, which states that a

15

person is guilty of "Promoting a Sexual Performance by a Child" when the person "produces, directs or promotes any performance which includes sexual conduct by a child less than 16 years of age." *See, People v. Ferber*, 57 N.Y.2d 256 (1982).

The New York Legislature criminalized conduct pertaining to sexual abuse in Article 130 of the New York Penal Law. For example, Sections 130.55-65 describe the crime of Sexual Abuse. Likewise, Sections 130.75-80 deal with the crime of Course of Sexual Conduct Against a Child. For example, Sexual Abuse in the First Degree is defined as a person who has sexual contact with a person who is less than 11 years old. A person is guilty of Sexual Abuse in the Second Degree when they have had sexual contact with a minor who is less than 14 years old.

The crime of Endangering the Welfare of a Child is not contained in the foregoing articles of the New York Penal Law pertaining to sexual exploitation of children, sexual abuse or abusive sexual conduct involving a minor. Based on the foregoing, Mr. Falso was not convicted of the crimes delineated by New York State as relating to sexual exploitation of children, sexual abuse or sexual abuse with a minor. Therefore, the enhancements may not be applied to any sentence based on Mr. Falso's prior conviction for Endangering the Welfare of a Child.

## POINT III

### MR. FALSO MAY NOT BE FOUND GUILTY OF INCIDENTAL CONDUCT RELATING TO THE TAKING OF PHOTOGRAPHS

Counts III through X of the Indictment allege a violation of 18 U.S.C. § 2251(a) based on the claim that Mr. Falso took photographs of a minor engaged in sexually explicit conduct "for the purpose of producing a visual depiction of such conduct. . . ." The

16

Government claims that Mr. Falso took vacations to foreign countries, during which he engaged in sex with minors. Even if such allegations were true, the taking of photographs during the course of such alleged sexual conduct would have been incidental to the sexual activity, and not a dominant purpose of the activity. Therefore, a charge under Section 2251(a) based on such alleged facts cannot be sustained. *See, United States v. Sirois*, 87 F.3d 34 (2d Cir. 1996) (a violation under Section 2251(a) cannot be sustained where the taking of photographs or video recordings are "merely an incident" to the sexual activity).

## CONCLUSION

Based on the foregoing, it is submitted that Mr. Falso is not a risk of flight or danger to the community and that his release pending trial should be granted upon such terms as this Court deems appropriate.

Dated:    August 23, 2005

Respectfully submitted by:

MARK D. SUBEN, ESQ.
*Attorney for Defendant Falso*
Federal Bar Roll No. 507807
One North Main Street, 3rd Floor
Cortland, New York 13045
Phone (607) 756-2100

Of Counsel:

BRUCE R. BRYAN, ESQ.
Federal Bar Roll No. 505604
333 East Onondaga Street
Syracuse, New York 13202
(315) 476-1800

17

LETTER OF JAMES PLACE

# Place Insurance

2 N. Main Street  •  P.O. Box 10  •  Cortland, NY 13045-0010  •  Fax: (607) 753-1941
Phone: (607) 753-9365

August 16th, 2005

Mark D Suben
1 North Main St.
Cortland N.Y. 13045

Re: David J. Falso

Dear Mr. Suben

David Falso has been charged with very serious crimes involving pornography and possibly pedophilia, crimes that I personally abhor. Mr. Falso is being held in Federal jail without bail, and according to the local newspaper it is because he poses a danger to the community and a risk of flight. The purpose of this letter is not to offer support for the acquittal of Mr. Falso, but rather provide information to the Court that might be helpful in determining if Mr. Falso should be allowed bail.

I'm president of Place Agency Inc., a family insurance agency doing business in Cortland for more than ninety years. I have been involved with many civic activities including being past president of the Rotary Club, and having been on the boards of the YMCA, United Way, Cortland Rural Cemetery, Boy Scouts, along with other organizations. My wife and I have four daughters, the youngest of which is now fourteen years old. In addition to our girls, we have hosted six female exchange students from all over the world. I have personally done business with Mr. Falso for more than twenty years; and his relationship with our Agency goes back longer than that. It is this business relationship and experience that I believe the court should hear about.

Mr. Falso has been a Tavern owner for many years. "Cousy", as Mr. Falso is known locally is one of the exceptions in the tavern business in Cortland. First, he is successful and has been able to move his success from one location to another. He started with The Palm Gardens, which catered to an older local crowd, and later to Patino Murphy's and Bald Lucy's which are more popular with a mix of college and town customers. Secondly, Cousy has longevity in the bar business, which is a trait shared by only few other tavern owners in Cortland. Lastly Mr. Falso has been able to run his businesses



Place INSURANCE ...WITH Place



2 N. Main Street  •  P.O. Box 10  •  Cortland, NY 13045-0010  •  Fax: (607) 753-1941
Phone: (607) 753-9365

with a minimum of problems.  He has no property claims that I'm aware of in the last twenty years, and only one or two minor liability incidents over that same period of time. I have done business with more than twenty tavern owners in the time I have known Cousy, and his businesses would rank near the top as being well run.

Dave Falso is community minded.  Most, recently he has been a founding member of "Pumpkin Fest" in Cortland.  Pumpkin Fest is a family event held at court house park in downtown Cortland.  Mr. Falso was instrumental in setting up a specialty beer tasting garden at Pumpkin Fest.  Pumpkin Fest is free, with the exception of the beer tasting, and this one event has helped provide funds to insure the festival can continue year after year.

Over the years in dealing with Mr. Falso in my business he has paid his bills on time, and he has always done what he said he would.  I know Mr. Falso as honest and as a man of his word.  I believe that it is this trait that should be of most interest to the Court.  Based on my experience I firmly believe that Dave Falso is a man whose' word can be honored by the Court and the Community.  If Dave Falso were ask by the Court if he would, one return to court, and two would he stay out of trouble; then I say believe him it is part of who he is.

Sincerely Yours;

James W. Place CIC



Place INSURANCE ...WITH Place

# LETTER OF DR. PAUL CONSROE

College of Pharmacy
Department of Pharmacology and Toxicology
P.O. Box 210207



THE UNIVERSITY OF
**ARIZONA** ®
HEALTH SCIENCES CENTER

Tucson, AZ 85721-0207
(520) 626-2823
FAX: (520) 626-2466

06 August 2005

Page 1 of 2

MARK D SUBEN ESQ
ATTORNEY AT LAW
1 NORTH MAIN STREET
CORTLAND NY 13045

**Regarding: DAVID FALSO**

Dear Attorney Suben:

I subscribe to the ***Cortland Standard*** newspaper, and I read that you are the Attorney of Record for David Falso. Also from my readings, I know of the charges that are pending against David. The purpose of this letter is to inform you of some important facts about, and impressions of, David which should have a direct bearing on his case.

I have known David since our childhood days in Cortland NY. Additionally, our parents were good friends, having immigrated from the same town (Ferrazzano) in Italy. David and I attended the same schools (Cortland Jr-Sr High) and the same church (St. Anthony of Padua Roman Catholic Church). We were very close friends. After we graduated from High School, David entered the US Navy and I went on to College. We kept in close contact via letters and telephone calls during those years. After David was honorably discharged from the Navy, he went into business in Cortland NY. He became the owner and manager of a fledgling bar/restaurant (Palm Gardens). After a very short time, he single handedly made this establishment into a acknowledged success. Since that time, he has done the same thing to two other bars/restaurants in Cortland (Bald Lucy's Bar and Patino Murphy's Tavern); through his diligent and brilliant managerial oversight, each establishment became a financially successful enterprise. During these post Navy days up until the present time, we have kept in close contact via letters, telephone calls, and reciprocal visits between Cortland NY and Tucson AZ.

As the above background information indicates, I know David very well. I can categorically state that David is an honest, trustworthy and hard working man. He would not knowingly harm any person, let alone a child. And, he would not run away from any adversity. Over the past 45 years, David has built up a close relationship in Cortland with his church, his business community, and his many relatives and friends. Taken together, I firmly believe that **David is NOT A DANGER** to his community. He is **NOT A FLIGHT RISK**. He should be presumed innocent of his charges. He should **BE ALLOWED TO POST BAIL** before his trial.

The University of Arizona Colleges of Medicine, Nursing, Pharmacy, and School of Health Related Professions
University Medical Center and The University Physicians



College of Pharmacy
Department of Pharmacology and Toxicology
PO Box 210207

THE UNIVERSITY OF
**ARIZONA** ®

HEALTH SCIENCES CENTER

Tucson, Arizona 85721-0207
(520) 626-2823
FAX (520) 626-2466

06 August 2005

Page 2 of 2

To: MARK D SUBEN ESQ

**Regarding: DAVID FALSO**

There is one more very important fact I can relate to you. I am married to Eva Alamo, who is of Filipino descent. On several occasions, David told us he wish he could find an Asian woman like Eva to marry. In November-December of 1999, my wife and I traveled to the Philippines (Legaspi City) to visit with her relatives. Eva has a large family in Legaspi City: 3 sisters and 1 brother with a total of 18 nieces and nephews ranging in ages of 2 to 23 years. David was traveling in southeast Asia during that time, and he surprised us by making an unannounced visit to see us in Legaspi City. We were very happy to see him, and we were proud to introduce him to our family. We all went on several family outings during his 2 day stay in Legaspi. In every regard, David was a perfect gentleman around our family. He was friendly, cordial and respectful. There was absolutely no indication that Dave acted improperly toward any of our nieces or nephews. The major point here is that we had absolutely no concerns that Dave would do anything illegal or improper with our young family members. We welcomed Dave's warm and sincere interaction with our family.

Because of the above incident together with my knowledge of his background and character, I believe that **David is INNOCENT** of any serious wrong doing. I am confident that **he will be EXONERATED** of the serious charges against him.

I hope that my comments will be of help to you in your defense of David. If I can offer any other information, please feel free to call upon me anytime.

Respectfully submitted,

*Paul Consroe*

Paul Consroe, Ph.D.
Professor Emeritus
Department of Pharmacology and Toxicology
Health Science Center
University of Arizona

# LETTER OF DANIEL TAGLIENTE

August 16, 2005

To Whom it may Concern:

I am a retired school teacher (American History, 31 years). Currently I am employed as a Job Superintendent and Estimator for Economy Paving Company.

Over the past 25 years I have been involved in City/County government, Presently I am a Member of the Cortland County Legislature.

I have known David Falso all of my life. We participated in high school sports together an served as altar boys at our Church (St. Anthony's).

Throughout the years I never saw David say or do a mean action against any human being. In fact I never witnessed a verbal or physical altercation with anyone.

With these things in my mind, it is my opinion that David (on bail or probation) would not be a Menance to society.

Thank you for you time & consideration

Daniel A. Taglente

7th Ward Legislator

# LETTER OF EVERETT BOISE

*From the desk of* _____

Everett E. "Skip" Boise

August 11, 2005

To Whom It May Concern:

I have known and/or been in the same industry as David Falso over the last 45 years. During those years I have known him personally and professionally and worked closely with him on many occasions.

David has always been an honest and community minded gentleman all the years I have been associated with him. He has served on several community boards and has been involved in promoting tourism and the best interest of the greater Cortland area. He has been active in his trade association both on the local and state level for many years. He has served in many leadership capacities during that tenure and was always very professional in all that he did.

I find it hard to believe that he hasn't been allowed bail while his case is being tried. It doesn't seem to me that he would be a threat to run from his responsibilities or represent in any way a danger to his community.

Thank you.

Everett "Skip" Boise

The Tavern
139 Main Street
Cortland, NY 13045
607-756-8109

LETTER OF KATE MENDILLO

60 Main Street
Cortland, NY 13045

August 8, 2005

To Whom It May Concern,

This letter is in regard to David Falso. I have known David for over 20 years. I worked as a bartender for Mr. Falso at the Palm Gardens on and off for about 5 years in the early 1980's. During my employment there, I found David to be a great boss and a very good businessperson. I learned a great deal from him during that time. He was very good to his employees, very fair and very respectful.

Over the years I have continued to interact with David. I now own a business here in Cortland and we are both members of the Restaurant and Tavern Association. I continue to respect him and his contributions to this community. In addition, he always treated me very well as an individual and friend. Please take this into consideration.

Thank you.

Sincerely,

*Kathryn B Mendillo*

Kate Mendillo
Owner
Jack Danielson's

# LETTER OF CHARLES WOOD

August 10, 2005
To Whom It May Concern:


I am writing today on the behalf of David Falso. My name is
Charles (Chip) Wood a Cortland, New York resident all of my life.
I co own Robbins Vending Co. with my brother Michael.

In 1971 I meet David through work, and we fast became friends.
Over the years we have done many things together in business and
socially. Honesty, dependability and truthfulness are the best
words to describe David and I'm proud to have him as a friend.

Charles (Chip) Wood

# LETTER OF MICHAEL WOOD

August 10, 2005

To Whom It May Concern:

I have known David Falso for more than 35 years. In all those years, he has been a good business customer and a friend. In my dealings with David, I have known him always to be truthful, honest and sincere. I believe he is a credit to the community in generosity and dedication.

Sincerely,

Michael C. Wood Sr.
553 Lime Hollow Rd.
Cortland, NY 13045

# LETTER OF KRISTEN McEVOY-RORIE

August 10, 2005

To Whom It May Concern:

As a matter of introduction, my name is Kristen McEvoy-Rorie. I am writing this letter in regards to my uncle, Mr. David Falso. Uncle Dave is my mother's brother and someone I have known my entire life, thirty-four years to be exact. I grew up in Cortland, New York and have spent my entire life with my mother and her side of my family, including my Uncle Dave. I am the eldest of my generation and one of two nieces to be raised around my uncle. The purpose of this letter is to express the personal perspective of a woman who was raised in the presence of Mr. David Falso.

As I write this letter I am aware of the charges my Uncle Dave is currently facing. I am also aware of the seriousness of these charges, especially because I have spent over eleven years as a professional social worker, primarily focusing on the safety and well being of children and families. After completing my Master's in Social Work at Syracuse University, I started my career as a child therapist at the Cortland County Mental Health Clinic, often working with children who had been sexually and emotionally abused. From there I spent the majority of my career working for the Union County Department of Social Services in North Carolina. There I worked with children and families struggling with child abuse and neglect. This work often resulted in the children being placed in foster or adoptive homes. Currently I am the Child Custody Mediator with the 20th Judicial District of North Carolina.

I share my professional experience in order to express my concern and commitment to the safety and welfare of children. Given the seriousness of the charges my Uncle is facing, I believe the court has specific concerns about him as a potential "flight risk" as well as a "danger to the community". While I am aware that it is impossible to say for certain what someone will or will not do in the future, I want to address the court's concerns by sharing my personal experience and knowledge of Uncle Dave over the last thirty-four years.

Over my lifetime I have known Uncle Dave to be a reliable individual who was always present at family functions, and our family has many. In addition he was actively involved with his friends and colleagues. Uncle Dave has lived his sixty-four years in Cortland and during this time has always loved to travel whether it was during his time in the Navy or with family to Italy to visit relatives. Uncle Dave is proud of his sons and has enjoyed traveling to see them, especially for special occasions such as college graduations and to see the eldest get married in Hong Kong where he has resided for the last several years.

As a business owner, Uncle Dave was responsible for maintaining his liquor license and running two establishments where alcohol was served. Uncle Dave was always very concerned about under age drinking. As a high school student I recall that Uncle Dave was diligent in his efforts to ensure that under age drinking did not occur in either of his businesses. In my experience his staff were always attentive to verifying the identification of each and every individual who entered their establishment.

In addition to his professional work, Uncle Dave was actively involved in the community. He is passionate, and often opinionated, about local and world events. Years ago he worked to improve the street where his businesses are located as well as the physical location of each individual establishment. Uncle Dave also participated in establishing and arranging the annual Pumpkin Festival where families could enjoy a Fall Festival in Cortland.

While Uncle Dave worked to improve the community he was also a very generous man. Whether it was giving gifts for holidays and special occasions or making a donation to a cause I was raising money for, Uncle Dave always gave of himself in a creative and substantial manner. In my opinion he often gave without expecting anything in return, even when a donation might benefit him personally. He allowed our family to utilize his businesses for family celebrations and was very giving to his staff. When my grandmother passed away in 2002 numerous former and current employees of my Uncle made a concerted effort to come and express their sympathy with him and our family. This meant a great deal to Uncle Dave and spoke volumes to the rest of us as to the level of esteem in which he was held.

Finally I want to state unequivocally that I never experienced any harm at the hands of my Uncle Dave. At no time in my childhood or development did I ever feel uncomfortable being in his presence or have any concerns for my safety while with him. Uncle Dave was not the type to surround himself with children and always appeared to prefer adult company.

My hope is that my personal experience will provide some depth and perspective to the history of a man who stands before the court as a defendant. I also hope that Uncle Dave is given an opportunity to avail himself of all of the professional and therapeutic services available, no matter what the legal outcome of his case. In conclusion, please know that Uncle Dave will have the ongoing love and support of my family and me. I appreciate your time and consideration in this matter.

Respectfully submitted,

Kristen McEvoy-Rorie